```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOSE L. RIVERA,<br><br>       Plaintiff,<br><br>   v.<br><br>CITY OF CAMDEN BOARD OF<br>EDUCATION and JOHN DOES 1-10,<br><br>       Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-4306<br>         (JEI/AMD)<br><br>**OPINION** |

**APPEARANCES:**

ALAN H. SCHORR & ASSOCIATES, P.C.
By:  Alan H. Schorr, Esq.
5 Split Rock Drive
Cherry Hill, NJ 08003
     Counsel for Plaintiff

BRAFF, HARRIS & SUKONECK
By:  Gloria B. Cherry, Esq.
     Keith Harris, Esq.
570 West Mt. Pleasant Avenue, Suite 200
P.O. Box 657
Livingston, NJ 07039
     Counsel for Defendant City of Camden Board of Education

**IRENAS**, Senior District Judge:

   Presently before the Court is the Motion by Defendant City of Camden Board of Education to Dismiss Count One of the Complaint for failure to state a claim under the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. §§ 34:19-1 to 34:19-8. For the reasons that follow, the Motion will be denied.[1]

---

   [1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  Venue is proper in this Court under 28 U.S.C. § 1391(b).

**I.**

**A.**

The factual recitation that follows accepts as true the facts as alleged in the Complaint.  Plaintiff Jose Rivera was employed by Defendant as a teacher from the Fall of 2004 until March of 2008.  (Compl. ¶ 4)  During the 2007-2008 academic year, Plaintiff was assigned to teach a fifth grade class at the Sumner Elementary School, a facility administered and operated by Defendant.  (Compl. ¶¶ 2, 5)  That year, Plaintiff's class was comprised exclusively of bilingual Hispanic students.  (Compl. ¶ 5)

One day in February, 2008, Plaintiff was absent from school and his class was under the supervision of a substitute teacher.  (Compl. ¶ 8)  That day, one of his students attempted to replace a water cooler jug, but accidentally spilled some water.  (Id.)  As punishment for the spilled water, Vice Principal Theresa Brown required Plaintiff's entire class to eat lunch on the cafeteria floor, without lunch trays.  (Compl. ¶ 9)  Brown threatened Plaintiff's students with further disciplinary action if they discussed their punishment with anyone.  (Compl. ¶ 11)  The lunchtime punishment was repeated daily for over a week.  (Compl. ¶ 9)  Plaintiff was unaware of the punishment because the common practice among teachers at the school was to escort their students to the cafeteria for lunch, but not remain with the

students while they ate.  (Compl. ¶ 10)

Towards the end of February, 2008, a parent went to the school to complain about the lunchtime punishment.  (Compl. ¶ 12)  Principal Alex DeFlavis refused to speak with the parent, but the parent explained the situation to DeFlavis's secretary.  (Id.)  The secretary, in turn, alerted Plaintiff to what she had been told by the parent.  (Id.)  Plaintiff spoke with his students, who confirmed the punishment as well as Brown's threat of further disciplinary action.  (Compl. ¶ 14)  Believing DeFlavis was "indifferent to or in support of" the punishment, Plaintiff advised his students to tell their parents about their treatment and encourage their parents to call Defendant to complain.  (Compl. ¶ 15)  Thereafter, parents did, in fact, complain to Defendant.  (See Compl. ¶ 16)

Immediately following the parents' complaints, Defendant suspended Plaintiff and reprimanded him for failing to notify DeFlavis of the punishment imposed by Brown.  (Compl. ¶ 16)  On March 18, 2008, without ever returning from suspended status, Plaintiff was terminated for "conduct unbecoming of a board employee."  (Compl. ¶ 17)  Following a public outcry, Defendant changed its reasoning for Plaintiff's termination, citing "insufficient certification[.]" (Compl. ¶ 18)

**B.**

Plaintiff initiated this action by filing a Complaint

alleging Defendant's actions violated CEPA, the New Jersey Law Against Discrimination, the New Jersey Civil Rights Act, and 42 U.S.C. § 1983.  Defendant now moves to dismiss Count One of the Complaint for failure to state a claim under CEPA.

## II.

While the current motion to dismiss is styled as one brought under Federal Rule of Civil Procedure 12(b)(6), it comes after the filing of Defendant's answer.  Thus, the Court will treat Defendant's submission as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  *See Wyeth v. Ranbaxy Labs. Ltd.*, 448 F.Supp.2d 607, 609 (D.N.J. 2006) ("A motion made before an answer is filed is a motion to dismiss pursuant to Federal Rule Civil Procedure 12(b)(6).  A motion made after an answer is filed is a motion for judgment on the pleadings pursuant to Rule 12(c)."). The Court analyzes a motion for judgment on the pleadings via the same standard applicable to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Id.*; *Leone v. Twp. of Deptford*, --- F.Supp.2d ----, No. 08-1043, 2009 WL 1210618, at *2 (D.N.J. Apr. 29, 2009) (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)).

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege facts that raise a right to relief above the speculative level.  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007); see also Fed. R. Civ. P. 8(a)(2).  While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible.  *Phillips*, 515 F.3d at 234.

CEPA was enacted to "'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" *Leone*, --- F.Supp.2d ----, 2009 WL 1210618, at *6 (quoting *Dzwonar v. McDevitt*, 177 N.J. 451, 461, 828 A.2d 893 (2003)).  CEPA provides, in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . .; or
>
> (2) is fraudulent or criminal . . .; . . . or

>    c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
>    (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . .;
>
>    (2) is fraudulent or criminal . . .; or
>
>    (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. § 34:19-3.

A plaintiff must satisfy a four-pronged test to state a prima facie case under CEPA, as follows: "(1) that he or she reasonably believed that his or her employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law; (2) that he or she performed whistle-blowing activity described in [CEPA]; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 92 (3d Cir. 1999) (quoting *Kolb v. Burns*, 320 N.J. Super. 467, 476, 727 A.2d 525 (App. Div. 1999)) (alteration in original). The Supreme Court of New Jersey has consistently recognized that CEPA must be construed liberally in order to achieve its broad, remedial purpose. *D'Annunzio v. Prudential Ins. Co. of Am.*, 192 N.J. 110, 120, 927 A.2d 113 (2007) (citing *Feldman v. Hunterdon Radiological Assocs.*, 187 N.J. 228, 239, 901 A.2d 322 (2006); *Yurick v. State*, 184 N.J. 70, 77, 875 A.2d 898 (2005); *Higgins v.*

*Pascack Valley Hosp.*, 158 N.J. 404, 420, 730 A.2d 327 (1999); *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 417, 650 A.2d 958 (1994)).

### III.

In this case, the parties' disagreement centers on whether Plaintiff has sufficiently alleged that he engaged in a whistle-blowing activity, as required to satisfy the second element of a CEPA cause of action.  Plaintiff contends that he alleged whistle-blowing activity under both N.J.S.A. § 34:19-3(a) and § 34:19-3(c).[2]  Defendant argues that Plaintiff has not satisfied the second element of his prima facie case under either statutory provision.

Defendant's arguments with respect to § 3(c) are without merit.  In keeping with the broad construction accorded CEPA's provisions, the types of conduct that may constitute whistle-blowing activity are not easily susceptible to precise line-drawing — particularly without the benefit of discovery.  It is plausible that Plaintiff "object[ed] to" the disciplinary action when he implored his students to apprise their parents of the

---

[2] Defendant's moving brief interprets the Complaint as only attempting to plead whistle-blower activity under N.J.S.A. § 34:19-3(a), and argues that Plaintiff failed to do so.  (Def.'s Br. 3)  Paragraph 22 of the Complaint provides: "The Plaintiff **opposed such behavior and refused to participate in the behavior**, choosing instead to advise the children to immediately have their parents report the behavior to the Defendant School Board."  (Compl. ¶ 22 (emphasis added))  N.J.S.A. § 34:19-3(c) protects an employee who "[o]bjects to, or refuses to participate in" certain activities, policies, or practices.  As the language of paragraph 22 tracks that of § 34:19-3(c), there can be little doubt that the Complaint invokes § 34:19-3(c).

punishment, and urge their parents to complain directly to the school board.

Defendant argues that Plaintiff cannot rely on § 3(c) because "parental notification had already taken place" prior to Plaintiff's putative whistle-blowing activity. (Def.'s Reply Br. 4 (citing Compl. ¶ 12))  The factual allegations of the Complaint are to the contrary.  According to the Complaint, Vice Principal Brown threatened the students with further disciplinary action if they apprised anyone — such as their parents — of the lunchtime punishment.  (Compl. ¶ 11)  At least one child apparently disobeyed that mandate, resulting in a parent attempting to complain about the punishment to Principal DeFlavis.  (See Compl. ¶ 12)  There is no indication in the Complaint that any other parents were aware of the punishment before Plaintiff caused them to be so apprised.[3]

Defendant also maintains, without citation to authority, that Plaintiff's reliance on § 3(c) fails because he "could not have refused to participate in or objected to the continuation of the lunch detention because it had been concluded[]" before Plaintiff learned that the punishment had occurred.  (Def.'s Reply Br. 4)  According to Defendant, the students' punishment began on February 4, 2008, and continued for two weeks.  (Id.)

---

[3] The Court expresses no opinion as to the scope of CEPA's protection for a would-be "whistle-blower" who provides information about an employer's activity, policy, or practice, when the recipient of the information was, in fact, already aware of the activity, policy, or practice in question.

No such timeline appears in the Complaint, and it is the allegations of the Complaint that the Court takes as true at this juncture.  (See Compl. ¶ 8 ("One day in February 2008 . . . one of the students in the Plaintiff's class unsuccessfully tried to change a jug of water . . . ."))  It is unclear from the Complaint whether the disciplinary action concluded before Plaintiff became aware of it.[4]

The Court thus holds that Plaintiff has set forth sufficient allegations to satisfy the second element of his CEPA cause of action.[5]

**IV.**

For the reasons stated above, Defendant's Motion will be denied.  The Court will issue an appropriate Order.


Dated: July __10__th, 2009

                                    s/ Joseph E. Irenas
                              **JOSEPH E. IRENAS, S.U.S.D.J.**

---

[4] Nor are the protections of CEPA limited to employees who blow the whistle about ongoing, as opposed to completed, employer conduct.  See Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 93 n.4 (3d Cir. 1999) (citing Mehlman v. Mobil Oil Corp., 153 N.J. 163, 196, 707 A.2d 1000 (1998); Barratt v. Cushman & Wakefield of N.J., 144 N.J. 120, 131-32, 675 A.2d 1094 (1996))("[T]he New Jersey Supreme Court has refused to engraft either temporal or geographic limitations onto CEPA claims, holding that disclosure of past violations of law or complaints regarding violations of another nation's laws are both protected under the statute.").

[5] Defendant contends that Plaintiff failed to allege he "disclose[d] . . . to a public body" within the meaning of N.J.S.A. § 34:19-3(a), because he instructed his students to tell their parents to complain to the school board, rather than informing the board himself.  Because Plaintiff has sufficiently pled whistle-blowing activity under N.J.S.A. § 34:19-3(c), it is unnecessary to consider the parties' arguments with respect to § 3(a).